IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER A. FLUEGEL,

         Plaintiff,

 v.

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

         Defendant.

OPINION and ORDER

21-cv-527-jdp

---

  Plaintiff Jennifer Fluegel seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Fluegel not disabled within the meaning of the Social Security Act. Fluegel challenges the decision of the administrative law judge (ALJ) Christopher Messina on three grounds: (1) the ALJ did not adequately consider Fluegel's migraine headaches; (2) the ALJ improperly discounted the opinion of one of Fluegel's treating physicians, Dr. Mark Reichelderfer; and (3) the ALJ did not address the side-effects of Fluegel's blood thinning medication.[1]

  The court discerns no harmful error in the ALJ's decision. The ALJ adequately explained why he did not assign Fluegel more significant restrictions, and Fluegel identifies no evidence that the ALJ ignored that would support limitations beyond what the ALJ ascribed to her. The court will affirm the commissioner's decision.

---

[1] Fluegel also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But as Fluegel acknowledges, this court has rejected that argument multiple times. *See Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). Fluegel cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

BACKGROUND

Fluegel sought benefits based on physical and mental impairments, alleging disability beginning July 1, 2019. R. 23.[2] Fluegel's claim was denied initially and on reconsideration, and Fluegel requested a hearing before an ALJ. At the hearing, Fluegel testified that she suffered from nausea, abdominal pain, and migraines, among other health problems, that precluded her from working. *See* R. 28.

In a written decision, ALJ Christopher Messina found that Fluegel suffered from the following severe impairments: history of deep vein thrombosis (DVT) and postural orthostatic tachycardia syndrome (POTS), chronic intestinal pseudo-obstruction, Factor 4 Leiden deficiency, sleep apnea, obesity, and affective, anxiety, and trauma disorders. R. 26. The ALJ determined that Fluegel did not meet the criteria for any listed disability. R. 26. The ALJ ascribed to Fluegel the residual functional capacity (RFC) to perform light work with some additional restrictions to address Fluegel's physical and mental limitations. R. 27. Relying on the testimony of a vocational expert, the ALJ concluded that Fluegel could perform a significant number of jobs available in the national economy, including as an assembler, a machine feeder, or hand packer. R. 33. The Appeals Council denied review, R. 11, so the ALJ's decision became the final decision of the commissioner.

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Record cites are to the administrative transcript located at Dkt. 8.

conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

**A. Migraine headaches**

Fluegel contends that the ALJ's assessment of her migraine headaches was inadequate. The ALJ acknowledged that Fluegel had experienced migraines since grade school and that Fluegel estimated that she suffered from a debilitating migraine roughly every other week. R. 28. But the ALJ observed that Fluegel had been able to work full-time with similar symptoms for more than ten years, and there was no evidence that her condition had worsened over that time. Specifically, the ALJ noted that in late 2019, Fluegel did not complain of worsening headache or note any change in the frequency or severity of her migraines. R. 30. That Fluegel had been able to work despite her symptoms "strongly suggest[ed] that they would not now preclude all work." R. 29.

The ALJ was entitled to consider Fluegel's work history as evidence that her symptoms were not disabling. *See Overton v. Saul,* 802 F. App'x 190, 193 (7th Cir. 2020) (reasonable to discount claimant's testimony because she had previously performed substantial work with no change in symptoms); *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (ALJ was correct to discount testimony in part because claimant "was able to engage in substantial gainful employment during and after experiencing these problems"). Although a claimant with a good work history is "entitled to substantial credibility when claiming an inability to work because

3

of a disability," *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016), Fluegel did not challenge the ALJ's assessment of her subjective complaints.

Fluegel provides two reasons why the ALJ's analysis of her migraines was inadequate. First, she says that the ALJ erred because he did not include migraines in the list of Fluegel's severe impairments, and he did not expressly state why the migraines were not severe. But if that was error, it was harmless. So long as an ALJ finds that one of the claimant's impairments is severe, he must move on to the next step of the evaluation process and consider the aggregate effect of the claimant's ailments. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The ALJ determined that Fluegel suffered from other severe impairments, so he was required to move forward to the next step regardless of whether her migraines were severe. And, reading the ALJ's decision as a whole, it is clear that the ALJ considered the effect of Fluegel's migraines on her ability to work when formulating the RFC. The ALJ adequately explained why he did not assign more significant restrictions related to her migraines, and Fluegel does not identify any evidence related to her migraines that the ALJ did not address. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (a claimant not entitled to a remand if he does not "identify medical evidence that would justify further restrictions"). The ALJ's failure to identify Flugel's migraines as severe is not grounds to remand the case.

Second, Fluegel contends that the ALJ should have considered whether her migraines equaled the criteria for a listed disability. There is no listing for migraines, but the agency routinely considers migraines under the listing for epilepsy, which is now listing 11.02. *Cooper v. Berryhill*, 244 F. Supp. 3d 824, 828 (S.D. Ind. 2017); *see* SR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019) ("Epilepsy (listing 11.02) is the most closely analogous listed impairment for . . . a primary headache disorder."). Flugel says that the ALJ erred by not discussing whether

4

her migraines are equivalent to listing 11.02(B), which requires migraines at least once a week for at least three consecutive months, despite adherence to prescribed treatment. *See Bertaud v. Kijakazi*, No. 20-cv-1818-bhl, 2022 WL 4357403 (E.D. Wis. Sep. 20, 2022) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02(B)).

Even if the court assumes that the ALJ should have discussed whether Fluegel's migraines equaled listing 11.02, his failure to do so was harmless. As the claimant, Fluegel had the burden to show that her condition equals a listed impairment. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). But Flugel does not identify any evidence that she ever experienced migraines at least once a week for at least three consecutive months. In her brief, Fluegel states that "in 2020, the frequency approached the requisite number for an equaling finding." Dkt. 15, at 21. But Fluegel does not support that statement by citing record evidence. And in her reply brief, she states only that "the medical record and testimony supported evidentiarily that the listing may have been met or equaled," again without citing any evidence. Dkt. 18, at 18–19. That's not enough to meet her burden. Because Fluegel has not cited evidence that her migraines equaled listing 11.02, the court concludes that the ALJ's failure to consider that listing was harmless.

The court discerns no harmful error in the ALJ's assessment of Fluegel's migraine headaches, so Fluegel is not entitled to remand on that issue.

## B. Opinion of Dr. Reichelderfer

Fluegel contends that the ALJ erred in assessing the opinion of Dr. Mark Reichelderfer, a gastroenterologist who has treated Fluegel for her pain, bleeding, and nausea related to her chronic intestinal pseudo-obstruction. An ALJ must evaluate all medical opinions applying several factors including supportability, consistency, relationship with the claimant, and

specialization. 20 C.F.R. § 404.1520c(b) and (c). But the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a).

In January 2020, Reichelderfer wrote a letter in support of Fluegel's application for disability, stating that applying for disability was "a very reasonable thing for [Fluegel] to do" in light of her continuing health problems. R. 643. Riechelderfer also completed a medical opinion questionnaire stating that Fluegel had experienced "no improvement" in her symptoms and that Fluegel was limited in the following ways: she could sit for only two hours and could stand for less than two hours, she would be off task 20 percent of the day, she would be absent from work more than four days per month, and she could use her upper extremities only 20 percent of the day. R. 646.

The ALJ found that Reichelderfer's opinion was not persuasive, for four main reasons. First, the opinion was inconsistent with Fluegel's work history, which demonstrated that Fluegel was able to "sit, stand, and walk in combination to complete an 8-hour day" while experiencing similar symptoms. R. 32. Second, Reichelderfer's opinions about Fluegel's absences, her time off task, and her need to lie down were speculative because there was no medical evidence that her condition had worsened. Third, his observation that Fluegel had no improvement conflicted with Fluegel's reports of successful treatment for her pain. Fourth, Flugel did not have any medically determinable impairment related to her upper extremities.

The ALJ adequately explained why he did not adopt the restrictions identified by Reichelderfer. Fluegel challenges the ALJ's reasons for discounting Reichelderfer's opinion, but none of her arguments are persuasive.

6

1. **Work history**

As for the ALJ's determination that Reichelderfer's opinion was inconsistent with Fluegel's work history, Fluegel cites her own testimony that she cut back on her hours due to her pain and nausea. But elsewhere in the decision, the ALJ explained that he chose not to fully credit Fluegel's testimony that her symptoms grew more severe because there was no objective medical evidence that her conditions had worsened. *See* R. 29–30. Fluegel does not challenge the ALJ's decision to discount her subjective complaints, and she concedes that "the ALJ likely did enough to establish credibility by substantial evidence." Dkt. 18, at 9. Fluegel cites no other evidence that her condition worsened in 2019, so she hasn't shown that the ALJ erred by discounting Reichelderfer's opinion on that ground.

2. **Basis for opinions**

The ALJ concluded that Reichelderfer's opinions about Fluegel's ability to sit and stand, her expected absences, and her time off-task were speculative because there was no medical evidence that Fluegel's condition had worsened. Reichelderfer did not provide any explanation for how he determined those limitations, and he did not explain why Fluegel would be more limited going forward than she had been in her past work. It was reasonable for the ALJ to discount Reichelderfer's opinion for that reason. Fluegel again argues that the restrictions are consistent with her own testimony and subjective reports. But the ALJ explained why that evidence was not persuasive, and Fluegel doesn't identify any evidence to support these restrictions that the ALJ overlooked.

3. **Pain**

The ALJ noted that Reichelderfer's observation that Fluegel's symptoms had not improved conflicted with Fluegel's reports to Reichelderfer that her pain had significantly

7

improved after receiving injection therapy in 2019. Fluegel contends that the ALJ did not acknowledge that Fluegel continued to experience some pain after her injections. But the ALJ never said that Fluegel was pain free. He acknowledged that Fluegel still suffered from some pain, *see* R. 29, but that the evidence suggested that the pain had improved rather than worsened or remained steady. Reichelderfer's treatment notes state that Fluegel received relief from injection therapy, R. 595; R. 423, so it was reasonable for the ALJ to conclude that Reichelderfer's observation was inconsistent with the record.

### 4. Upper extremities

Finally, the ALJ discounted Reichelderfer's opinion that Fluegel's ability to use her upper extremities was limited because Fluegel did not have any medically determinable impairment in her upper extremities. R. 32. Fluegel contends that it was improper for the ALJ to discount Reichelderfer's opinion on this basis because the ALJ was not a medical expert and the upper extremity limitations "may have addressed" her retroperitoneal hematoma. Dkt. 15, at 29. But Fluegel does not identify any evidence in the record to support those limitations, other than Reichelderfer's opinion. Because the restrictions aren't supported by medically determinable impairments in that part of the body, it was reasonable for the ALJ to not adopt them in the RFC.

Fluegel also argues that if the basis for Reichelderfer's restriction related to her upper extremities was unclear, the ALJ should have contacted Reichelderfer for an explanation. An ALJ may recontact a medical source if the evidence in the record is inadequate to determine whether a claimant is disabled. *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007). But here, the ALJ did not discount Reichelderfer's upper-extremity limitation because the record was inadequate to determine whether such a restriction was required; rather, she discounted

Reichelderfer's opinion because it was inconsistent with a lack of a medically determinable impairment in that part of the body. An ALJ is not required to contact a medical source merely because the ALJ concludes that the opinion is unsupported. *Felicia M. v. Saul*, No. 19 CV 2379, 2020 WL 5763632, at *5 (N.D. Ill. Sep. 28, 2020); *Bailey v. Colvin*, No. 12 CV 9659, 2015 WL 7251939, at *8 (N.D. Ill. Nov. 17, 2015). The ALJ was entitled to evaluate Reichelderfer's opinion in light of the evidence in the record.

On appeal, the court's task is not to reweigh the evidence that the ALJ considered. The court concludes that the ALJ adequately explained why she did not adopt Reichelderfer's opinion.

## C. Blood-thinning medication

Fluegel contends that the ALJ ignored the effect that her blood thinning medication would have on her ability to work. Fluegel states that the use of blood thinners requires additional restrictions related to the use of machinery and working around hazards and that her medications would preclude her from performing the jobs the ALJ found she could perform.

There are two main problems with this argument. First, Fluegel identifies no evidence in the record that her blood thinning medication put her at an increased risk of harm. Fluegel cites several cases where courts have concluded that the use of blood thinners merits some additional safety restrictions, such as restrictions from exposure to hazardous machinery or unprotected heights, because side effects can include increased bruising and prolonged bleeding. *See, e.g.*, *Finnie v. Berryhill*, Civil Action No. 1:16-CV-02659-AT-LTW, 2018 WL 1190241, at *2 (N.D. Ga. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1184798, at *1 (N.D. Ga. Mar. 7, 2018). But nothing in these cases suggests that such restrictions are legally required for every claimant who takes blood-thinning medication.

9

Rather, the claimants in those other cases were able to identify evidence in the record to show that their medication put them at increased risk of serious injury. *See id.* ("[T]he record also contains evidence that because plaintiff's use of Coumadin makes his blood 'less likely to clot,' he should 'avoid activities with high risk of injury.'"). Fluegel does not point to evidence in the record to show that *her* medication placed her at an increased risk of injury. Under those circumstances, the ALJ's failure to consider the effect of Fluegel's blood thinning medication was not error.

Second, even if the ALJ did err by failing to address the effect of Fluegel's blood thinners, Fluegel hasn't shown that the error was harmful. The RFC the ALJ ascribed to Fluegel already requires her to "avoid all exposure to hazards." R, 27. Fluegel doesn't explain why this restriction is inadequate to accommodate any side effects of her medication. Fluegel contends that the jobs the ALJ found she could perform "would likely involve tools, moving machinery, or hazards." But Fluegel cites no evidence in the record to show that a restriction preventing her from using "tools" and "moving machinery" was necessary; nor does she cite any medical opinions recommending additional restrictions related to her medication. So Fluegel is not entitled to remand on this ground.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered March 17, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

11